## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **TANISHA C. AARON** | * | **CIVIL ACTION NO. 11-1830** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION ON MOTION TO REMAND

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Tanisha C. Aaron, born August 16, 1974, filed an application for supplemental security income payments on August 17, 2005, alleging disability beginning November 21, 2002, due to back problems and anxiety.[1]

After a hearing on April 19, 2007, the Administrative Law Judge issued an unfavorable decision on May 23, 2007. (Tr. 201-06). On September 28, 2007, the Appeals Council remanded the case to obtain additional evidence concerning claimant's back impairment, anxiety, visual disturbances and other alleged

---

[1] Claimant is proceeding *pro se.* Although briefs by *pro se* litigants are afforded liberal construction, arguments must be briefed in order to be preserved. *Moses v. Texas Com'n on Environmental Quality*, 2012 WL 4748310, *1 (5th Cir. Oct. 4, 2012).

impairments. (Tr. 207-10). On remand, the ALJ conducted a hearing on October 8, 2008, and issued an unfavorable decision on December 9, 2008. (Tr. 40-48).

On January 8, 2010, the Appeals Council denied claimant's request review. (Tr. 28). However, the Appeals Council set aside its action to consider additional information. (Tr. 7). Following consideration of the additional information, the Appeals Council denied claimant's request for review on May 17, 2011. (Tr. 7-9). By letter dated August 11, 2011, the Social Security Administration gave claimant an additional 60 days to file a civil action. (Tr. 6). Claimant filed a Complaint for judicial review with this Court on October 13, 2011.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Louisiana Physical Therapy dated September 7, 2004 to October 20, 2004**.[2] Claimant was seen for seven visits over two months. (Tr. 132). She had been very inconsistent with her attendance. She was discharged secondary to non-compliance with her physical therapy appointments.

**(2) Records from Metoyer Family Medical Center dated August 31, 2004 to July 12, 2005**.[3] Claimant was seen for low back pain, abdominal pain with nausea, and chest pain. (Tr. 144-47). The assessment was lumbar strain. (Tr. 144, 147).

**(3) Records from Doctor's Hospital dated November 20, 2004 to July 12, 2005**. On November 20, 2004, claimant complained of headache, shortness of breath, and dizziness. (Tr. 163). She was prescribed Naprosyn. (Tr. 164). On November 21, 2004, she was instructed to follow up with Dr. Metoyer if her weakness continued. (Tr. 175).

Claimant was treated for gastritis on July 12, 2005. (Tr. 149-57). She was prescribed Nexium. (Tr. 154).

---

[2] Physical therapists qualify as "other sources" under 20 C.F.R. § 404.1513(e) which sources may be considered but are entitled to significantly less weight than "acceptable medical sources." *Leval v. Commissioner of Social Sec.*, 2012 WL 1123839, *1 (W.D. La. March 13, 2012).

[3] These records are largely illegible.

**(4) Report from Opelousas Gen. Hospital dated February 3, 2004 through October 19, 2005**. An MRI of the lumbar spine dated February 3, 2004, showed mild L4-L5 annular bulging. (Tr. 179).

Lumbar spine views dated October 19, 2005, showed mild L5-S1 facet joint hypertrophic changes. (Tr. 177).

**(4) Records from Dr. Johnathan B. Prather dated March 15, 2007 through April 18, 2007**. Dr. Prather indicated that claimant had allergies for which she was taking injections. (Tr. 182A).

**(5) Consultative Examination by Dr. Kenneth A. Ritter, Jr. Dated March 12, 2007**. Claimant complained of low back pain, right eye vision problems, chest pain, and daily shortness of breath. (Tr. 183). She stated that she was taking Temazepam, Advair inhaler, Hydroxyzine, and Ambien.

On examination, claimant's visual acuity without glasses was 20/20. Her heart had regular sinus rhythm without a murmur or gallop. She had no ankle swelling, full range of motion of all extremities, negative straight-leg raises, normal gait and station, and normal dorsalis pedis pulses. Neurologically, she was intact.

Dr. Ritter's impression was complaints of episodic back pain and a history of being diagnosed with significant anxiety in the past. (Tr. 185).

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant had no exertional limitations. (Tr. 186). He found that she could perform all postural activities frequently. (Tr. 187). She had no other limitations. (Tr. 188-89).

**(6) Records from Opelousas General Health System dated March 5, 2006**. Claimant reported being involved in a motor vehicle accident and complained of injuries to her neck, abdomen, and lower back. (Tr. 192). The diagnosis was abdominal contusion and neck and lumbar strain. (Tr. 196). She was prescribed Tylenol and Ibuprofen.

**(7) Records from Acadia Health dated June 18, 2007 to July 18, 2007**. Claimant complained of anxiety and stress. (Tr. 229). Her diagnosis was panic attacks and anxiety. Her Global Assessment of Functioning score was 70. She was prescribed Rozerem and Buspar.

**(8) Report from Dr. George R. Williams dated May 17, 2004**. Claimant complained of back pain which intermittently went down the right lower extremity. (Tr. 231). On examination, she had positive tenderness over L5-S1. (Tr. 232). She had no spasm, but did have increased lordosis.

Neurologically, claimant had 5/5 motor strength in the upper and lower extremities. Sensory exam was equal. She had down-going toes and no hyper-

reflexia.

Dr. Williams' assessment was low back pain. He prescribed physical therapy and Vioxx. He opined that claimant could do light duty.

**(9) Consultative Examination by Dr. Stephaine C. Abron dated March 12, 2008**. Claimant complained of back pain, hypoglycemia, asthma, depression, panic attacks, and anxiety. (Tr. 233). Her medications included Cyanocobalamin, Infct, Meloxicam, Anoxapine, Alprazolam, Tramadol, Lexapro, and Rozerem. (Tr. 234). She denied blurry vision or changes in vision and shortness of breath.

On examination, claimant's visual acuity without glasses was 20/25. Neurologically, she was intact. Her reflexes were 2+. Sensation was intact. (Tr. 235).

Motor activity was purposeful with no abnormal movements. Strength was 5/5 in all extremities. Movement/gait was normal.

Mentally, claimant's thought processes were coherent and attentive. She was anxious and depressed at times. Memory was 3x3 in time, date, and year. Concentration, comprehension, insight, and judgment were good.

X-rays showed the presence of osteophyte formation at L4/5, consistent with mild degenerative joint disease. No fractures or misalignments were noted.

Dr. Abron's impression was lumbar spine pain, anxiety/depression, and hypoglycemia. She recommended that claimant continue taking her medications for pain and anxiety and followup with her physicians.

In the assessment of Ability to do Work-Related Activities, Dr. Abron found that claimant could lift/carry up to 20 pounds frequently and 21 to 100 pounds occasionally. (Tr. 237). She had no limitations as to sitting, standing, or walking. She could use her hands and feet continuously. (Tr. 237-38).

Claimant could perform all activities frequently, except that she could climb ladders/scaffolds occasionally. (Tr. 238). She could be around heights and moving mechanical parts occasionally, but all other environmental factors frequently. She could perform all activities of daily living. (Tr. 239).

**(10) Consultative Eye Examination by Dr. Robert T. Casanova dated April 1, 2008**. Claimant had a lazy right eye since birth. (Tr. 240). Her eye examination was normal. Visual acuity in the right eye was 20/100 without correction and 20/50 with correction, and in the left eye was 20/20 without correction. Dr. Casanova's diagnosis was right eye amblyopia, etiology anisomedropia. Her prognosis was poor.

Dr. Casanova determined that claimant was unrestricted visually, except that she could not operate machinery.

**(11) Psychological Report by David E. Greenway, Ph.D., dated March 4, 2008**. Claimant reported that she received moderate relief from her medication. (Tr. 245). She stated that she managed money, shopped for groceries, cooked some meals, and kept her house clean. She stated that she visited with friends monthly, and attended church occasionally. She said that she cried excessively when she went to church. She spent her time watching TV and talking on the phone.

On examination, claimant's receptive skills were fair. (Tr. 246). Her affective expression was composed. Insight and judgment appeared adequate. Social skills were adequate.

Attention and concentration were within the lower bounds of normal limits. Recent and remote memories appeared intact. Behavioral pace, effort, and persistence were fair. Response latency was normal.

Administration of the WAIS-III revealed a Verbal IQ score of 69, Performance IQ of 81, and Full Scale IQ of 73. Her FSIQ fell within the borderline range of intellectual functioning.

Dr. Greenway's diagnoses were anxiety, NOS (mild to moderate subjective apprehension), depression, NOS (mild to moderate subjective sadness), and

borderline intellectual functioning. (Tr. 247). Her Global Assessment of Functioning score was 63 for the previous year.

Dr. Greenway opined that claimant had borderline intellectual functioning with somewhat higher adaptive functioning likely. He stated that her cognitive skills were adequate to understand, remember and carry out fairly detailed instructions, and to maintain attention to perform simple, repetitive tasks for two-hour blocks of time. He determined that she should be able to tolerate mild stress associated with day-to-day work activity and demands.

Dr. Greenway found that claimant should be able to sustain effort and persist at a fair pace over the course of most of each workday. He stated that her social skills were adequate, and she should be able to relate to others, including supervisors and co-workers, in employment settings. He said that she would be considered capable to manage her own personal financial affairs.

In the Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Greenway checked that claimant had moderate limitations as to her ability to carry out complex instructions, make judgments on complex work-related decisions, and interact appropriately with the public. (Tr. 250-51).

**(12) Claimant's Administrative Hearing Testimony**. At the hearing on October 8, 2008, claimant testified that she had stopped going to physical therapy

9

because it was not helping her. (Tr. 281). She stated that she had been going to her primary care doctor. She said that she had seen the anxiety doctor twice, but she was no longer at the clinic. (Tr. 281-82).

Claimant stated that she had attended vocational school for phlebotomy, EKG technician, CNA, cosmetologist, and medical assistant. (Tr. 245, 285). She had informed Dr. Greenway that she had last worked in 2006 as a secretary at the water plant in Opelousas, La. (Tr. 245).

**(13) Administrative Hearing Testimony of Tommy T. Stigall, Ph.D., Medical Expert**. Dr. Stigall considered claimant's impairments under the listings at §§ 12.04, 12.05, and 12.06. (Tr. 276). He did not find sufficient evidence to indicate that she would meet the B criteria for any or a combination of these listings. (Tr. 279). He rated mild restriction of activities of daily living, moderate difficulties in social functioning and maintaining concentration, persistence, or pace, and one to none as to episodes of decompensation. (Tr. 279-80). He did not find a severe impairment with regards to anxiety. (Tr. 280). He opined that her anxiety would not preclude her from working.

**(14) The ALJ's Findings**. Claimant argues that the ALJ failed to consider information from reports in 2010, and that the ALJ erred in assessing her previous disabilities due to vision impairments, anxiety, stress, and back pain.

In her brief, claimant refers to two reports from 2010 regarding her alleged disability, which apparently relate to a subsequent application which she filed on August 17, 2009. [rec. doc. 12, pp. 5-6; Tr. 7]. These reports are immaterial because they do not relate to the period for which benefits were denied, which extended only from the date of claimant's application filed August 17, 2005 to December 9, 2008, the date of the ALJ's decision. *Sanchez v. Barnhart*, 75 Fed.Appx. 268, 270 (5th Cir. 2003); *Bullock v. Astrue*, 2012 WL 3095593, *9 (E.D. La. May 25, 2002).

In any event, whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious at the time of consideration. *Winston ex rel. D.F. v. Astrue*, 341 Fed.Appx. 995, 998, 2009 WL 2605358, at * 2 (5th Cir. 2009). Thus, the evidence from 2010 cannot be considered in connection with this application for benefits.

Regarding the disabilities asserted in the application at issue, the undersigned finds that substantial evidence supports the ALJ's determination that claimant was not disabled. Claimant alleged disability beginning November 21, 2002, due to back problems, visual impairment, and anxiety.

As to claimant's back complaints, the record reflects that claimant was seen by Dr. Lana Metoyer, who diagnosed her with lumbar strain. (Tr. 144, 147). An

MRI of the lumbar spine dated February 3, 2004, showed only *mild* L4-L5 annular bulging. (Tr. 179). Lumbar spine views dated October 19, 2005, showed only *mild* L5-S1 facet joint hypertrophic changes. (emphasis added). (Tr. 177).

Claimant was also seen by Dr. Williams, who is an orthopedic surgeon. (Tr. 231). On examination, she had no spasm, 5/5 motor strength in the upper and lower extremities, equal sensory exam, down-going toes and no hyper-reflexia. (Tr. 232). MRIs showed a "questionable" degenerative disc disease at L4-5 with a slight annular tear. Dr. Williams opined that claimant could do light duty, and prescribed physical therapy and Vioxx.

Additionally, Dr. Ritter found that claimant had no ankle swelling, full range of motion of all extremities, negative straight-leg raises, normal gait and station, and normal dorsalis pedis pulses. Neurologically, she was intact. In the Medical Source Statement, he determined that claimant had no exertional limitations, could perform all postural activities frequently, and had no other limitations. (Tr. 186-89).

Further, during Dr. Abron's exam, x-rays showed the presence of osteophyte formation at L4/5, consistent with *mild* degenerative joint disease. (Tr. 235). In the assessment of Ability to do Work-Related Activities, Dr. Abron found that claimant could lift/carry up to 20 pounds frequently and 21 to 100

pounds occasionally; had no limitations as to sitting, standing, or walking; could use her hands and feet continuously; could perform all activities frequently, except that she could climb ladders/scaffolds occasionally; could be around heights and moving mechanical parts occasionally, but all other environmental factors frequently, and could perform all activities of daily living. (Tr. 237-39).

Plaintiff is required to establish that she suffered from a back impairment of disabling severity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The mere presence of some impairment is not disabling *per se. Id.* Plaintiff must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity. *Id*.

Here, none of the physicians who examined claimant found that her back impairment was disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled).

Additionally, the records from Louisiana Physical Therapy show that claimant was discharged secondary to non-compliance with her physical therapy appointments. (Tr. 132). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b);

*Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, claimant is not entitled to disability based on her back complaints.

As to claimant's mental impairments, the record reflects that claimant was diagnosed with panic attacks and anxiety. (Tr. 229). On examination by Dr. Abron, claimant's thought processes were coherent and attentive, and concentration, comprehension, insight, and judgment were good. (Tr. 235). At the consultative psychological evaluation, Dr. Greenway's diagnoses were anxiety, NOS (mild to moderate subjective apprehension), depression, NOS (mild to moderate subjective sadness), and borderline intellectual functioning. (Tr. 247).

Dr. Greenway opined that claimant's cognitive skills were adequate to understand, remember, and carry out fairly detailed instructions, and to maintain attention to perform simple, repetitive tasks for two-hour blocks of time. He determined that she should be able to tolerate mild stress associated with day-to-day work activity and demands. He found that claimant should be able to sustain effort and persist at a fair pace over the course of most of each workday. He stated that her social skills were adequate, and she should be able to relate to others, including supervisors and co-workers, in employment settings.

During the hearing, Dr. Stigall did not find a severe impairment with regards to anxiety. (Tr. 280). He did not find sufficient evidence that she met the

B or C criteria for mental impairments under the Social Security listings. (Tr. 279-80). He opined that claimant's anxiety would not preclude her from working. (Tr. 280).

The claimant must show that she is so functionally impaired by her mental impairment that she is precluded from engaging in substantial gainful activity. *Taylor v. Astrue*, 480 Fed.Appx. 302, 305 (5th Cir. 2012) (*citing Hames*, 707 F.2d at 165). Claimant has failed to do so in this case. Accordingly, based on the medical records and the opinion of the medical expert, the undersigned concurs with the ALJ's finding that claimant's anxiety was not disabling.

Finally, regarding claimant's visual impairment, Dr. Casanova determined that claimant was unrestricted visually, except that she could not operate machinery. (Tr. 240). He found that she was able to avoid ordinary hazards in the workplace, read very small print, read ordinary newspaper or book print, view a computer screen, and determine differences in shape and color of small objects such as screws, nuts and bolts. (Tr. 243). These limitations would not preclude claimant from working. Accordingly, the undersigned finds that this impairment was not disabling.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED. R. CIV. P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

January 29, 2013, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

Copy sent:  RFD
On:  1-30-13
By:  MBD